UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LINDA WASH,                          )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )         CAUSE NO. 3:10-CV-484-TLS-CAN
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
        Defendant.                   )

**REPORT AND RECOMMENDATION**

On July 5, 2011, Plaintiff Linda Wash ("Plaintiff"), filed her opening brief asking this

Court to enter judgment in her favor by reversing the ALJ's judgment and award benefits or in

the alternative remanding the case for further proceedings pursuant to 42 U.S.C. Sec 405(g). On

October 11, 2011, Defendant, Commissioner of Social Security, Michael J. Astrue

("Commissioner"), filed his response brief. This court may issue the following report and

recommendation on this motion pursuant to its referral order and 28 U.S.C. § 636(b)(1)(B).

**I.      PROCEDURE**

On August 11, 2006, Wash filed an application for supplemental security income,

alleging disability beginning December 1, 2005. The claim was initially denied on January 19,

2007, and upon reconsideration on April 17, 2007.

On June 18, 2007, Wash filed a written request for a hearing. (20 C.F.R. 416.1429 *et*

*seq*). Wash appeared and testified at a hearing held on July 9, 2009, in South Bend, Indiana. On

November 23, 2009, the ALJ denied Wash's claim. The ALJ found that Wash had not engaged

in substantial gainful activity since the application date of August 11, 2006. (20 C.F.R. 416.971

1

*et seq*) (Tr. 17). The ALJ found Wash had the following severe impairments: sarcoidosis, migraine headaches, and major depressive disorder. (20 C.F.R. 416.920(c))(Tr. 17). The ALJ found Wash did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)(Tr. 17). The ALJ found Wash had not performed any past relevant work. (20 C.F.R. 416.965) (Tr. 21). Finally, the ALJ found, that, considering Wash's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could perform (20 C.F.R. 416.969 and 416.969(a))(Tr. 17). Thus, the claimant is not disabled.

Thereafter, on January 22, 2010, Wash requested a review of the ALJ's Decision. On May 14, 2010, the Appeals council denied Wash's request for review. As a result, the ALJ's opinion stands as the commissioner's final decision. Wash now seeks judicial review of that decision.

## II.   ANALYSIS

### A.   Facts

#### 1.   Wash's Medical Reports

Wash was 20 years old on the date she filed her SSI application classifying her as a "younger individual" under the regulations. (Tr. 21, 110). *See* 20 C.F.R.§ 404.1563(d). At the time of her application, Wash had at least a high school education and was able to communicate in English. (Tr. 21, 124, 131).

In December 2006, Wash underwent a consultative physical examination performed by a doctor. (Tr. 267-76). Wash complained about migraine headaches that had progressively

worsened the past two years. (Tr. 267). She did not complain about any other medical problems at that time. (Tr. 276). Based on the examination, the doctor diagnosed Wash with a history of migraine headaches; possible tension headaches; anxiety; and stress. (Tr. 278). Furthermore, the doctor reported that Wash was alert and oriented, responded to questions in an appropriate manner, and appeared to be of normal intelligence. *Id.*

In April, May, and June of 2007, Wash visited a mental health facility with complaints of anxiety and depression. (Tr. 338-345). During those visits, Wash initiated psychological counseling and testing to help with treatment. (Tr. 345). The psychological therapists advised Wash about many different methods that could lift her mood including exercising, playing with her son, playing the piano, and maintaining a healthy diet. (Tr. 344, 346).

In August of 2007, Wash visited Dr. Mona Lal, a psychiatrist for a medical evaluation (Tr. 336). Wash reported that her mood had been calm and that she was not getting as angry, but she was still anxious and irritable. (Tr. 336). Wash reported that she was overall sleeping and feeling better, but she reported that she was still having trouble focusing and sustaining attention. (Tr. 336). Dr. Lal noted that Wash's mood was better and that her affect was brighter. (Tr. 336). Dr. Lal diagnosed Wash with moderate depressive disorder, recurrent and bipolar disorder. (Tr. 336). She also diagnosed Wash with attention deficit disorder. (Tr. 336). Dr. Lal assigned Wash a global assessment of functioning ("GAF") score of 60, indicating that Wash had moderate symptoms and moderate difficulty in social, occupational, or school functioning. (Tr. 530). In addition, Dr. Lal prescribed anti-depressants and sleep aids. (Tr. 336).

In October 2007, Wash presented to Dr. Lal for another medical evaluation. Wash reported that she was doing well and that her mood was more stable since starting her treatment.

(Tr. 526). Wash reported that her depression had improved, that her energy level had improved, that she was sleeping better, and that she was more motivated. *Id.* Wash reported some ongoing mood swings between feelings of happiness and irritability, but stated that they were less intense now. *Id.* Additionally, Wash reported that her counseling sessions were very helpful and did not voice any complaints about her medications. Dr. Lal recommended that Wash continue her medication. *Id.*

In November 2007, Wash presented to Dr. Lal for another medical evaluation. Wash reported that her medications were helping with her mood, improving her depression and irritability, and helping her ability to focus and concentrate. Wash reported that she was having some difficulty sleeping at night. She denied having any suicidal thoughts at that time. (Tr. 334). Dr. Lal noted that Wash's mental status was within normal limits but prescribed treatment for insomnia. *Id.*. Dr. Lal assigned a GAF score of 65, which indicated that she believed that Wash had either some mild symptoms or some difficulty in social, occupational, or school functioning, but was generally functioning well and had some meaningful relationships. (Tr. 525).

In July 2008, Wash presented to Dr. Lal for a medical evaluation. (Tr. 319). Wash reported that she had recently been diagnosed with sarcoidosis[1], which she claimed had caused frustration, anxiety, and panic attacks. *Id.* Dr. Lal noted that Wash had an anxious affect and mood, but that she did not have any suicidal thoughts or feelings of hopelessness. *Id.*

In September of 2008, Wash presented to Dr. Lal for another medical evaluation. (Tr.

---

1."[A] chronic, progressive, generalized granulomatous reticulosis of unknown etiology, involving almost any organ or tissue, including the skin, lungs, lymph nodes, liver, spleen, eyes, and small bones of the hands and feet." Dorland's Medical Dictionary 1171 (26th ed. 1985)

318). Wash described her mood as "irritable" at that time. *Id.* Dr. Lal recommended that Wash take a higher dosage of an anti-depressant and continue taking the other medications in her regimen.

In May 2009, Wash Presented to Dr. Lal for a medical evaluation. (Tr. 485-86). Wash reported that she had been taking her psychiatric medications and that her mood had been fine for the most part. (Tr. 485). Wash stated that she was under some stress involving her ongoing medical issues related to sarcoidosis, which caused some depression and anxiety. Dr. Lal assigned a GAF of 65. (Tr. 486).

In July 2009, Dr. Lal completed a mental RFC assessment and a psychiatric evaluation for affective disorders. (Tr. 488-97, 498-504). Dr. Lal had reported that Wash had experienced symptoms that included a loss of interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt and/or worthlessness, difficulty concentrating or thinking, hyperactivity, pressure of speech, flight of ideas, decreased need for sleep, and easy distractability. (Tr. 500). Dr. Lal opined that Wash was markedly limited in every work-related mental ability with the exception of her ability to understand, remember and carry out very short and simple instructions, which she opined was moderately limited. (Tr 488).

Dr. Lal indicated that Wash had marked or extreme difficulties in shopping, cooking, cleaning, paying bills, using public transportation, getting along with neighbors, ability to initiate social contact, responding to supervision, responding without fear to strangers, establishing interpersonal relationships, holding a job, concentration, and persistence in tasks. (Tr. 493-94). Dr. Lal stated that Wash had moderate impairment in her ability to complete tasks in a timely

manner and her ability to sustain tasks without undue interruptions or distractions. (Tr. 495).

2.      <u>Wash's testimony at the administrative hearing.</u>

At the administrative hearing, Wash testified that she suffered panic attacks but the attacks became more manageable with medication. (Tr. 46). In addition to the panic attacks, Wash admitted that the medication helped with her mood swings, and her fear and anxiety of interacting with the public. (Tr. 46-47).

**B.**     **<u>Standard of Review</u>**

The Social Security Act Authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual finding must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. See *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard.

*See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind the decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)(quoting *Scott*, 297 F.3d at 595).

## C.      Plaintiff's Motion

To be eligible for disability benefits, a Plaintiff must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C.§§ 423(d)(1)(A), 1382(c)(a)(3)(A). To be found disabled, the Plaintiff's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C.§§ 423(d)(2)(A),

1382c(a)(3)(B); 20 C.F.R. Sec(s) 404.1520(e)-(f), 416.920(e)-(f).

Social Security regulations provide a five-step inquiry to evaluate whether Wash is entitled to benefits. 20 CFR §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments (3) the impairment meets or equals an impairment listed in the regulations; (4) the claimant's RFC leaves her able to do past relevant work; and (5) the claimant is unable to perform other work that exists in significant numbers in the national economy. 20 C.F.R.§§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *See also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004)..

Wash argues that the ALJ committed reversible error when he failed to give Dr. Lal's opinion controlling weight that Wash was disabled under 12.04 Affective Disorders. An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006). More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2); *Clifford*, 227 F.3d at 870. However, a claimant is not entitled to benefits merely because a treating physician labels her as disabled. *Dixon*, 270 F.3d at 1177. Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. *Clifford*, 227 F.3d at 870. However, the ALJ must avoid substituting his own opinion for that of the treating physician without relying on medical evidence or authority in the record. 20 C.F.R. § 404.1527(d)(2); *Clifford*, 227 F.3d at 870; *Rohan v. Chater*, 98 F.3d 966, 968 (7th Cir. 1996). When evidence in

opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence for the ALJ to weigh. *Hofslien*, 439 F.3d.at 377 (citations omitted). Unfortunately, there is no bright line for when a physician's opinion is inconsistent with other substantial evidence in the record, and it is essentially a case by case determination depending on the circumstances. *Id.*

In this case, when evaluating Dr. Lal's opinion, the ALJ wrote:

> [T]he claimant's treating psychiatrist completed a form in July 2009 stating that the claimant is markedly or extremely limited in her ability to understand; remember; concentrate; sustain a routine; work with others; make simple work-related decisions; perform activities of daily living such as shopping, cooking, and paying bills; handle social situations such as getting along with neighbors, responding to supervision, or to those in authority; and persist in a task or to concentrate effectively. . . .There is, however, no indication of such extreme limitations in the doctor's chart notes or reports. Indeed, the opposite is the case. In May 2009 the doctor found the claimant to have a global assessment of functioning showing only mild difficulties; and evaluations of the claimant's global assessment of functioning in 2007 and 2008 had the same results. Without support in the doctor's own records, the opinions given. . . cannot be given any weight. (Tr. 21).

Wash claims the ALJ committed legal error because his findings demonstrate that he has "played doctor" by making a medical evaluation of Dr. Lal's chart notes and rejecting Dr. Lal's medical opinion. An ALJ is not permitted to make his own independent medical findings because lay institutions about medical phenomena are often wrong. *McBride v. Massanari* 169 F. Supp 2d. 857, 861 (N.D. Ill. 2001) citing *Schmidt v. Sullivan*, 914 F.2d 117,118 (7th Cir. 1990).

This Court finds that Wash's argument is misplaced. The ALJ's determination to not give Dr. Lal's opinion controlling weight was proper because Dr. Lal's opinion was internally inconsistent. *See Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010). Dr. Lal indicated that Wash had marked or extreme limitations in numerous activities and work-related abilities such as shopping, cooking, cleaning, and paying bills in her July 2009 opinion. (Tr. 488-97, 498-504).

However, Dr. Lal's May 2009 evaluation and prior treatment notes indicated that Wash had only mild limitations in her ability to carry out her daily activities. There is no evidence in the record that supports a change in Dr. Lal's May evaluation and her July 2009 opinion such as a change in treatment. Absent this evidence, Dr. Lal's July 2009 opinion is not supported by past medical evaluations of Wash. Therefore, the ALJ properly determined that Dr. Lal's July 2009 opinion was internally inconsistent.

Furthermore, Dr. Lal's opinion was inconsistent with other substantial evidence in the case record. *See Johansen v. Barnhart*, 314 F.3d 282, 287 (7th Cir. 2000).Wash admitted the medications were helping in May 2009, six weeks prior to Dr. Lal's 2009 opinion.(TR 485). Wash continued to admit at the administrative hearing that the medications helped improve her psychological conditions by making them more manageable.(Tr. 46-47, 50-51). In her December 2006 doctors visit, Wash admitted that she was capable of driving a car, writing a letter, performing housework, doing laundry, and go shopping without difficulty. (Tr. 278). Additionally, the therapists Wash visited before Dr. Lal to treat Wash's anxiety and depression made no indication that Wash was severely impaired in completing daily activities. (Tr. 340-346). This other substantial evidence is inconsistent with Dr. Lal's July 2009 opinion that Wash was mentally impaired.

Because Dr. Lal's July 2009 opinion is not supported by medical evidence and is inconsistent with other substantial evidence in the record, this Court concludes that the ALJ's determination to not give Dr. Lal's July 2009 opinion controlling weight was supported by substantial evidence. Therefore, this Court will not disturb the ALJ's weighing of the evidence.

**III.    Conclusion**

Because the ALJ properly considered Dr. Lal's July 2009 opinions and other evidence presented to him in the case record, the Court finds that the ALJ's opinion is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that the ALJ's decision be **AFFIRMED**.

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED**

Dated this th Day of November 17, 2011.

<u>S/Christopher A. Nuechterlein</u>
Christopher A. Nuechterlein
United States Magistrate Judge

LINDA WASH,                          )
                                     )
     Plaintiff,                )
                                     )
v.                                   )          CAUSE NO. 3:10-CV-484-TLS-CAN
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
     Defendant.                )

## REPORT AND RECOMMENDATION

On July 5, 2011, Plaintiff Linda Wash ("Plaintiff"), filed her opening brief asking this

Court to enter judgment in her favor by reversing the ALJ's judgment and award benefits or in

the alternative remanding the case for further proceedings pursuant to 42 U.S.C. Sec 405(g). On

October 11, 2011, Defendant, Commissioner of Social Security, Michael J. Astrue

("Commissioner"), filed his response brief. This court may issue the following report and

recommendation on this motion pursuant to its referral order and 28 U.S.C. § 636(b)(1)(B).

## I.    PROCEDURE

On August 11, 2006, Wash filed an application for supplemental security income,

alleging disability beginning December 1, 2005. The claim was initially denied on January 19,

2007, and upon reconsideration on April 17, 2007.

On June 18, 2007, Wash filed a written request for a hearing. (20 C.F.R. 416.1429 *et

seq*). Wash appeared and testified at a hearing held on July 9, 2009, in South Bend, Indiana. On

November 23, 2009, the ALJ denied Wash's claim. The ALJ found that Wash had not engaged

in substantial gainful activity since the application date of August 11, 2006. (20 C.F.R. 416.971

*et seq*) (Tr. 17). The ALJ found Wash had the following severe impairments: sarcoidosis, migraine headaches, and major depressive disorder. (20 C.F.R. 416.920(c))(Tr. 17). The ALJ found Wash did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)(Tr. 17). The ALJ found Wash had not performed any past relevant work. (20 C.F.R. 416.965) (Tr. 21). Finally, the ALJ found, that, considering Wash's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could perform (20 C.F.R. 416.969 and 416.969(a))(Tr. 17). Thus, the claimant is not disabled.

Thereafter, on January 22, 2010, Wash requested a review of the ALJ's Decision. On May 14, 2010, the Appeals council denied Wash's request for review. As a result, the ALJ's opinion stands as the commissioner's final decision. Wash now seeks judicial review of that decision.

## II.    ANALYSIS

### A.    Facts

#### 1.    Wash's Medical Reports

Wash was 20 years old on the date she filed her SSI application classifying her as a "younger individual" under the regulations. (Tr. 21, 110). *See* 20 C.F.R.§ 404.1563(d). At the time of her application, Wash had at least a high school education and was able to communicate in English. (Tr. 21, 124, 131).

In December 2006, Wash underwent a consultative physical examination performed by a doctor. (Tr. 267-76). Wash complained about migraine headaches that had progressively

worsened the past two years. (Tr. 267). She did not complain about any other medical problems at that time. (Tr. 276). Based on the examination, the doctor diagnosed Wash with a history of migraine headaches; possible tension headaches; anxiety; and stress. (Tr. 278). Furthermore, the doctor reported that Wash was alert and oriented, responded to questions in an appropriate manner, and appeared to be of normal intelligence. *Id.*

In April, May, and June of 2007, Wash visited a mental health facility with complaints of anxiety and depression. (Tr. 338-345). During those visits, Wash initiated psychological counseling and testing to help with treatment. (Tr. 345). The psychological therapists advised Wash about many different methods that could lift her mood including exercising, playing with her son, playing the piano, and maintaining a healthy diet. (Tr. 344, 346).

In August of 2007, Wash visited Dr. Mona Lal, a psychiatrist for a medical evaluation (Tr. 336). Wash reported that her mood had been calm and that she was not getting as angry, but she was still anxious and irritable. (Tr. 336). Wash reported that she was overall sleeping and feeling better, but she reported that she was still having trouble focusing and sustaining attention. (Tr. 336). Dr. Lal noted that Wash's mood was better and that her affect was brighter. (Tr. 336). Dr. Lal diagnosed Wash with moderate depressive disorder, recurrent and bipolar disorder. (Tr. 336). She also diagnosed Wash with attention deficit disorder. (Tr. 336). Dr. Lal assigned Wash a global assessment of functioning ("GAF") score of 60, indicating that Wash had moderate symptoms and moderate difficulty in social, occupational, or school functioning. (Tr. 530). In addition, Dr. Lal prescribed anti-depressants and sleep aids. (Tr. 336).

In October 2007, Wash presented to Dr. Lal for another medical evaluation. Wash reported that she was doing well and that her mood was more stable since starting her treatment.

(Tr. 526). Wash reported that her depression had improved, that her energy level had improved, that she was sleeping better, and that she was more motivated. *Id.* Wash reported some ongoing mood swings between feelings of happiness and irritability, but stated that they were less intense now. *Id.* Additionally, Wash reported that her counseling sessions were very helpful and did not voice any complaints about her medications. Dr. Lal recommended that Wash continue her medication. *Id.*

In November 2007, Wash presented to Dr. Lal for another medical evaluation. Wash reported that her medications were helping with her mood, improving her depression and irritability, and helping her ability to focus and concentrate. Wash reported that she was having some difficulty sleeping at night. She denied having any suicidal thoughts at that time. (Tr. 334). Dr. Lal noted that Wash's mental status was within normal limits but prescribed treatment for insomnia. *Id.*. Dr. Lal assigned a GAF score of 65, which indicated that she believed that Wash had either some mild symptoms or some difficulty in social, occupational, or school functioning, but was generally functioning well and had some meaningful relationships. (Tr. 525).

In July 2008, Wash presented to Dr. Lal for a medical evaluation. (Tr. 319). Wash reported that she had recently been diagnosed with sarcoidosis[1], which she claimed had caused frustration, anxiety, and panic attacks. *Id.* Dr. Lal noted that Wash had an anxious affect and mood, but that she did not have any suicidal thoughts or feelings of hopelessness. *Id.*

In September of 2008, Wash presented to Dr. Lal for another medical evaluation. (Tr.

---

1. "[A] chronic, progressive, generalized granulomatous reticulosis of unknown etiology, involving almost any organ or tissue, including the skin, lungs, lymph nodes, liver, spleen, eyes, and small bones of the hands and feet." Dorland's Medical Dictionary 1171 (26th ed. 1985)

318). Wash described her mood as "irritable" at that time. *Id*. Dr. Lal recommended that Wash take a higher dosage of an anti-depressant and continue taking the other medications in her regimen.

In May 2009, Wash Presented to Dr. Lal for a medical evaluation. (Tr. 485-86). Wash reported that she had been taking her psychiatric medications and that her mood had been fine for the most part. (Tr. 485). Wash stated that she was under some stress involving her ongoing medical issues related to sarcoidosis, which caused some depression and anxiety. Dr. Lal assigned a GAF of 65. (Tr. 486).

In July 2009, Dr. Lal completed a mental RFC assessment and a psychiatric evaluation for affective disorders. (Tr. 488-97, 498-504). Dr. Lal had reported that Wash had experienced symptoms that included a loss of interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt and/or worthlessness, difficulty concentrating or thinking, hyperactivity, pressure of speech, flight of ideas, decreased need for sleep, and easy distractability. (Tr. 500). Dr. Lal opined that Wash was markedly limited in every work-related mental ability with the exception of her ability to understand, remember and carry out very short and simple instructions, which she opined was moderately limited. (Tr 488).

 Dr. Lal indicated that Wash had marked or extreme difficulties in shopping, cooking, cleaning, paying bills, using public transportation, getting along with neighbors, ability to initiate social contact, responding to supervision, responding without fear to strangers, establishing interpersonal relationships, holding a job, concentration, and persistence in tasks. (Tr. 493-94). Dr. Lal stated that Wash had moderate impairment in her ability to complete tasks in a timely

manner and her ability to sustain tasks without undue interruptions or distractions. (Tr. 495).

2. Wash's testimony at the administrative hearing.

At the administrative hearing, Wash testified that she suffered panic attacks but the attacks became more manageable with medication. (Tr. 46). In addition to the panic attacks, Wash admitted that the medication helped with her mood swings, and her fear and anxiety of interacting with the public. (Tr. 46-47).

B.    Standard of Review

The Social Security Act Authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual finding must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. See *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard.

*See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind the decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)(quoting *Scott*, 297 F.3d at 595).

### C.      Plaintiff's Motion

To be eligible for disability benefits, a Plaintiff must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C.§§ 423(d)(1)(A), 1382(c)(a)(3)(A). To be found disabled, the Plaintiff's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C.§§ 423(d)(2)(A),

1382c(a)(3)(B); 20 C.F.R. Sec(s) 404.1520(e)-(f), 416.920(e)-(f).

Social Security regulations provide a five-step inquiry to evaluate whether Wash is entitled to benefits. 20 CFR §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments (3) the impairment meets or equals an impairment listed in the regulations; (4) the claimant's RFC leaves her able to do past relevant work; and (5) the claimant is unable to perform other work that exists in significant numbers in the national economy. 20 C.F.R.§§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *See also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004)..

Wash argues that the ALJ committed reversible error when he failed to give Dr. Lal's opinion controlling weight that Wash was disabled under 12.04 Affective Disorders. An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006). More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2); *Clifford*, 227 F.3d at 870. However, a claimant is not entitled to benefits merely because a treating physician labels her as disabled. *Dixon*, 270 F.3d at 1177. Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. *Clifford*, 227 F.3d at 870. However, the ALJ must avoid substituting his own opinion for that of the treating physician without relying on medical evidence or authority in the record. 20 C.F.R. § 404.1527(d)(2); *Clifford*, 227 F.3d at 870; *Rohan v. Chater*, 98 F.3d 966, 968 (7th Cir. 1996). When evidence in

opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence for the ALJ to weigh. *Hofslien*, 439 F.3d.at 377 (citations omitted). Unfortunately, there is no bright line for when a physician's opinion is inconsistent with other substantial evidence in the record, and it is essentially a case by case determination depending on the circumstances. *Id.*

In this case, when evaluating Dr. Lal's opinion, the ALJ wrote:

> [T]he claimant's treating psychiatrist completed a form in July 2009 stating that the claimant is markedly or extremely limited in her ability to understand; remember; concentrate; sustain a routine; work with others; make simple work-related decisions; perform activities of daily living such as shopping, cooking, and paying bills; handle social situations such as getting along with neighbors, responding to supervision, or to those in authority; and persist in a task or to concentrate effectively. . . .There is, however, no indication of such extreme limitations in the doctor's chart notes or reports. Indeed, the opposite is the case. In May 2009 the doctor found the claimant to have a global assessment of functioning showing only mild difficulties; and evaluations of the claimant's global assessment of functioning in 2007 and 2008 had the same results. Without support in the doctor's own records, the opinions given. . . cannot be given any weight. (Tr. 21).

Wash claims the ALJ committed legal error because his findings demonstrate that he has "played doctor" by making a medical evaluation of Dr. Lal's chart notes and rejecting Dr. Lal's medical opinion. An ALJ is not permitted to make his own independent medical findings because lay institutions about medical phenomena are often wrong. *McBride v. Massanari* 169 F. Supp 2d. 857, 861 (N.D. Ill. 2001) citing *Schmidt v. Sullivan*, 914 F.2d 117,118 (7th Cir. 1990).

This Court finds that Wash's argument is misplaced. The ALJ's determination to not give Dr. Lal's opinion controlling weight was proper because Dr. Lal's opinion was internally inconsistent. *See Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010). Dr. Lal indicated that Wash had marked or extreme limitations in numerous activities and work-related abilities such as shopping, cooking, cleaning, and paying bills in her July 2009 opinion. (Tr. 488-97, 498-504).

However, Dr. Lal's May 2009 evaluation and prior treatment notes indicated that Wash had only mild limitations in her ability to carry out her daily activities. There is no evidence in the record that supports a change in Dr. Lal's May evaluation and her July 2009 opinion such as a change in treatment. Absent this evidence, Dr. Lal's July 2009 opinion is not supported by past medical evaluations of Wash. Therefore, the ALJ properly determined that Dr. Lal's July 2009 opinion was internally inconsistent.

Furthermore, Dr. Lal's opinion was inconsistent with other substantial evidence in the case record. *See Johansen v. Barnhart*, 314 F.3d 282, 287 (7th Cir. 2000).Wash admitted the medications were helping in May 2009, six weeks prior to Dr. Lal's 2009 opinion.(TR 485). Wash continued to admit at the administrative hearing that the medications helped improve her psychological conditions by making them more manageable.(Tr. 46-47, 50-51). In her December 2006 doctors visit, Wash admitted that she was capable of driving a car, writing a letter, performing housework, doing laundry, and go shopping without difficulty. (Tr. 278). Additionally, the therapists Wash visited before Dr. Lal to treat Wash's anxiety and depression made no indication that Wash was severely impaired in completing daily activities. (Tr. 340-346). This other substantial evidence is inconsistent with Dr. Lal's July 2009 opinion that Wash was mentally impaired.

Because Dr. Lal's July 2009 opinion is not supported by medical evidence and is inconsistent with other substantial evidence in the record, this Court concludes that the ALJ's determination to not give Dr. Lal's July 2009 opinion controlling weight was supported by substantial evidence. Therefore, this Court will not disturb the ALJ's weighing of the evidence.

**III.    Conclusion**

Because the ALJ properly considered Dr. Lal's July 2009 opinions and other evidence

presented to him in the case record, the Court finds that the ALJ's opinion is supported by

substantial evidence.  Accordingly, this Court **RECOMMENDS** that the ALJ's decision be

**AFFIRMED**.

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations.  Fed. R. Civ. P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

> **SO ORDERED**

Dated this th Day of November 17, 2011.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge
